**GRD DEVELOPMENT COMPANY, INC., and George R. Dipp, Appellants,**

v.

**FORECA, S.A., Appellee.**

No. 08–87–00169–CV.

Court of Appeals of Texas, El Paso.

Jan. 27, 1988.

Rehearing Denied Feb. 24, 1988.

Gerald B. Shifrin, El Paso, for appellants.

David K. Anderson, Caddell & Conwell, Houston, for appellee.

Before SCHULTE, FULLER, and WOODARD, JJ.

## OPINION

FULLER, Justice.

In a breach of contract action, Foreca, S.A. (Foreca) recovered damages for lost profits as a result of repudiation of the contract by GRD Development Company, Inc., (GRD) and George R. Dipp. We reverse the judgment of the trial court and judgment is hereby rendered that Appellee take nothing from Appellants.

Appellant, GRD, was opening the Magic Landing Amusement Park in El Paso, Texas, and was interested in buying amusement park rides. Wim Poulussen, president of Foreca, a foreign corporation located in Belgium, wrote George R. Dipp on September 2, 1983, offering to deliver six amusement rides for approximately $2,000,-000.00. The letter discussed financing possibilities and stated Foreca was aware that GRD wanted delivery before the end of January 1984. The letter had a provision that stated as follows:

As a general rule of the house all offers are subject to:

—satisfactory legal and financial documentation,

—legal restrictions or prior sale of one or more machines.

On September 12, 1983, GRD responded to the letter of Appellee, generally agreeing to the proposal except for financing terms. As a result of telephone conversations from El Paso, Texas, to Belgium, the parties agreed to meet in El Paso. Wim Poulussen met George Dipp, and after negotiation, Wim Poulussen prepared a handwritten document dated October 19, 1983, setting forth (1) the cost of six amusement park rides of $1,950,000.00, (2) terms of payment, and (3) delivery information, including warranties, and ending the document as follows:

4. SUBJECT TO LEGAL DOCUMEN-
 TATION
 CONTRACT TO BE DRAFTED BY
 MR. DUNLAP [sic]
 FOREMAN & DYESS
 4200 INTERFIRST PLAZA,
 HOUSTON, TX
 713–658–8500

It also stated that there would be promissory notes guaranteed by George Dipp and Paul Dipp. Wim Poulussen and George Dipp initialed the handwritten document. No formal contract had been presented to either of the parties, when on November 22, 1983, GRD, by letter, informed Wim Poulussen of GRD's decision to halt further dealings with Foreca. Appellee, by its pleadings, contended that there was a valid contract between the parties as a result of Appellee's letter of September 2, 1983, and the handwritten document of October 19, 1983. Appellants' contention was that there was no enforceable contract because the condition precedent in the written instrument of October 19, 1983, "subject to legal documentation" was never complied with.

After jury trial, the court submitted four issues which the jury answered favorably for Foreca. They found that (1) Appellee's letter of September 2, 1983, and the handwritten document of October 19, 1983, which was initialed by the parties, constituted a buy and sell agreement, (2) GRD, by the letter of November 22, 1983, repudiated the agreement, (3) Foreca was ready, willing and able to perform its agreement and (4) Foreca would have made $389,-940.00 profit on the deal. The trial court entered judgment for Foreca for $389,-940.00 plus interest.

Appellants, by Points of Error Nos. One through Three, assert that the trial court erred in entering judgment for Appellee because there was no contract due to unsatisfied conditions precedent.

Appellants, by Point of Error No. Four, assert that the trial court erred in submitting the case to the jury and/or failed to properly submit the case to the jury.

Did a valid and enforceable contract exist effective October 19, 1983, which was to be merely formalized by written contract at a later date, or was the written document of October 19, 1983, subject to the condition that the parties would have a valid written contract signed by the parties before it became an enforceable contract?

The evidence produced these undisputed facts:

1. Wim Poulussen, president of Foreca, was a highly educated and internationally experienced businessman. He was fluent in five languages and was experienced in the sale and financing of amusement park rides.
2. The transaction involved represented a sizeable amount ($1,950,000.00).
3. The potential buyer (GRD) lived and resided in El Paso, Texas, where the amusement park was being constructed.
4. Foreca was a European corporation with a home office in Belgium, but with financing connections in Switzerland.
5. The amusement rides involved would have to be shipped from European nations other than Belgium.
6. Wim Poulussen of Foreca was the author of the letter of September 2, 1983, and the author of the document of October 19, 1983, that formed the basis of this lawsuit.
7. The letter of September 2, 1983, contained the provision subject to "legal and financial documentation,...." The document of October 19, 1983, contained the provision "SUBJECT TO

LEGAL DOCUMENTATION—CONTRACT TO BE DRAFTED BY MR. DUNLAP [sic],...."

8. There was no contention by the parties that either the letter of September 2, 1983, or the document of October 19, 1983, were ambigious.

If the "subject to" provisions as stated above created a condition precedent, there was not a binding and enforceable contract and Appellants were perfectly within their rights to withdraw from further dealings because the condition precedent was not satisfied. *Premier Oil Refining Company of Texas v. Bates*, 367 S.W.2d 904 (Tex. Civ.App.—Eastland 1963, writ ref'd n.r.e.).

■■■ A provision in a contract creates a condition in the absence of anything in the contract to show that such was not the intention of the parties, and the employment of such words as "when," "after," "as soon as," or "subject to" usually indicate that a promise is not to be performed except upon a condition or the happening of a stated event. 17 Am.Jur.2d Contracts, sec. 320, at 749. A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to the liability under them. While no particular words are necessary for the existence of a condition, such terms as "if," "provided that," "on condition that," or some other phrase that conditions performance, usually connotes an intent for a condition rather than a promise. *Hohenberg Brothers Company v. George E. Gibbons and Company*, 537 S.W.2d 1 (Tex. 1976). In order to determine whether a condition precedent exists, the intention of the parties must be ascertained and that can only be done by looking at the entire contract. *Hudson v. Wakefield*, 645 S.W. 2d 427 (Tex.1983). The contract must be interpreted as written with the knowledge that, generally, parties to an instrument intend every clause to have some effect, and in some measure to evidence their agreement. *Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963).

■■ Appellee's president wrote the October 19, 1983, memorandum on hotel stationery. He selected the language "subject to legal documentation." He chose his lawyer, Mr. Dunlop, of Houston, Texas, as the one to draw the proposed contract. Telex's entered into evidence, instructed his Houston lawyer to submit the draft of the contract to his European lawyer and also gave his Houston lawyer the address of Appellants' El Paso lawyer for purposes of sending the draft of the final contract to him. GRD did nothing and was not obligated to do anything to obtain the legal documentation. The entire obligation for preparation of the instruments was on the Appellee. The evidence at trial showed that the proposed contract that was drafted by Appellee's Houston lawyer was never presented to any of the parties before Appellants withdrew from further negotiations. The proposed contract as drafted contained many unacceptable provisions. It contained waiver of deceptive trade practices claims, which the parties had never discussed; different financing rates, which the parties had not discussed; excusable delay provisions, which the parties had not discussed; an impractical and meaningless provision for inspection of the delivered equipment, which would have been wholly unacceptable to Appellant. Appellee's president testified that in his opinion his use of "*[s]ubject to* means that a deal cannot go further or, a deal is complete when all these documentations have been given to us." [Emphasis ours.] The burden to secure the contract and documentation was upon the Appellee. We find that the "subject to legal documentation" provision was a condition precedent that was not satisfied before Appellant's withdrawal from further dealings with Appellee. Points of Error Nos. One through Three are sustained.

Point of Error No. Four is sustained insofar as the court erred in submitting the case to the jury.

The judgment of the trial court is reversed and judgment is hereby rendered

that Appellee take nothing from Appellants.