Jerald A. TURBOFF, et al., Appellants,

v.

GERTNER, ARON & LEDET INVESTMENTS, Appellees.

No. B14–88–062–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 10, 1988.

Rehearing Denied Jan. 12, 1989.

Frank G. Jones, Roger D. Townsend, Houston, for appellants.

Don Fogel, W. James Kronzer, Leslie C. Taylor, Tom Alexander, Houston, for appellees.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Jerald, Harold and Ronald Turboff appeal a judgment for money damages, both actual and exemplary, awarded in favor of Gertner, Aron and Ledet Investments in a suit for breach of contract and fraud. The suit arose from the Turboffs' failure to perform under a buy-sell agreement covering in part a complex and multifaceted real estate transaction involving the sale and contemplated development of a tract of land known as the Arcola property.

Gertner, Aron & Ledet ("GAL") and the Turboffs ("Turboff") entered into an agreement (the Buy–Sell agreement) under the terms of which GAL agreed to purchase the Arcola tract from Great Western, a development company owned by Gemcraft, Inc., which was owned by Turboff and others. The $27.55 million loan for the purchase and development was secured by GAL from First Texas Savings Association ("First Texas"). GAL entered into additional agreements with Great Western and Gemcraft Homes, also owned by Turboff and others, providing for the sale of individual lots to Gemcraft and development of the tract by Great Western. A material term of the buy-sell agreement was that GAL could, if it became reasonably dissatisfied with the progress of the development, "put" the property to the Turboffs and the Turboffs would then be obligated to purchase it. Other terms, detailed below, provided for the transfer of the existing First Texas financing to the Turboffs in the event GAL's "put" option was exercised. A signature line was provided on the agreement for First Texas to indicate its consent to the financing terms.

The buy-sell agreement was executed by GAL and Turboff in September, 1984. According to Turboff, the documents were then to be forwarded to First Texas' Dallas office for execution. In November of 1985, fourteen months after the closing of the transaction and one month prior to GAL's exercising of its put option, First Texas notified Turboff that it had never signed the agreement and formally objected to those provisions that would have permitted automatic assumption of the loan by Tur-

boff. It was the Turboffs' position, based upon the advice of counsel, that without the signature of First Texas representing its consent to Turboff's assumption of the existing financing, the buy-sell agreement was unenforceable. Turboff so notified GAL. In May, 1986, GAL filed suit against the Turboffs, Gemcraft, Great Western and other individual principals in those companies. In response to the defendants' plea in abatement, GAL added First Texas as a defendant but non-suited them two months later.

In October, 1986, GAL filed for and obtained a partial summary judgment declaring the Buy–Sell Agreement to be enforceable as a matter of law. Shortly thereafter by way of another complex real estate transaction, GAL sold the Arcola property and paid off the First Texas loan. It then released all the defendants except the Turboffs against whom it went to trial in June of 1987.

In six points of error Turboff appeals the granting of the partial summary judgment, the admission of the order of partial summary judgment into evidence, the denial of his own motion for summary judgment, and the denial of his several post verdict motions for judgment N.O.V. or to disregard certain jury findings based on grounds of no evidence and insufficient evidence. Because we find the granting of the partial summary judgment to be improper, we do not reach the other points of error.

In regard to financing and the contemplated role of First Texas, the buy-sell agreement provided in relevant part that

*Section 14.*

... (c) In the event this Agreement is not assigned to First Texas, and the option contained in this Agreement is exercised by Buyer and Seller, First Texas further agrees that following the exercise of said option: (i) Buyer shall be allowed to assume the duties, obligations and benefits of Seller under and pursuant to the loan documents by and between Seller and First Texas relating to the $27,550,000.00 loan; (ii) Seller shall be relieved from liability thereunder; (iii) the exercise of

the option shall not constitute an event of default under the Loan Agreement, the Deed of Trust, or the other loan documents executed in connection with the $27,550,000.00 loan, nor shall said exercise constitute a sale or refinancing under the ... Agreement executed by First Texas and Seller relating to the loan.

GAL moved for partial summary judgment on grounds that First Texas was not a party to the buy-sell agreement and as a matter of law its consent to the financing provisions was not required to bind Turboff. GAL also claimed that First Texas ultimately consented to the contractual terms. In support of their position that the contract was unenforceable, Turboff relied on the language within the four corners of the document, including the provision quoted above and the following:

*Section 16.*

... First Texas executes this Agreement to evidence its consent to the matters contained herein.
CONSENT TO THE PROVISIONS OF SECTION 14(b) and (c);
FIRST TEXAS SAVINGS ASSOCIATION
By:_____
President

In further support of its motion, GAL relied on the affidavit of Don Aron, first cousin to Jerald Turboff, who claimed that Turboff told him the individual defendants would consider the agreement binding whether First Texas consented to it or not. Aron said GAL would never have closed the deal without a binding obligation on the part of Turboff to purchase the property in the event the "put" was exercised. Turboff's affidavit, filed in response, disclaimed any representation that he intended to be bound without First Texas' consent to the financing provisions. He insisted that the Turboffs never intended to obligate themselves to purchase the tract without financing nor could they possibly do so. Turboff attached as additional summary judgment proof a November, 1985 letter from counsel for First Texas which

refers to the buy-sell agreement as *requiring* the consent of First Texas.

To establish entitlement to a summary judgment, the plaintiff/movant has the burden to prove conclusively each element of his cause of action as a matter of law. *O'deneal v. Van Horn,* 678 S.W.2d 941, 941 (Tex.1984). Therefore, GAL was obligated to show by competent summary judgment proof that the consent of First Texas, as evidenced by its signature on the agreement, was not required as a matter of law. Plaintiff meets this burden if he produces evidence that would be sufficient to support an instructed verdict at trial. Hittner, *Summary Judgments in Texas,* 22 Houston Law Review 1109, 1133. The burden to demonstrate lack of a genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Roskey v. Texas Health Facilities Commission,* 639 S.W.2d 302, 303 (Tex.1982); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Allied Chemical Corp. v. DeHaven,* 752 S.W.2d 155, 157 (Tex.App.—Houston [14th Dist.] 1988, writ requested).

Rules of appellate review are established in *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–549 (Tex.1985):

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

This standard places the appellee in a summary judgment case in a very different posture on appeal than that of the appellee in a case that was tried on the merits. We review the evidence in a light most favorable to the appellant. *Nixon* at 549; *Wilcox v. St. Mary's University,* 531 S.W.2d 589, 593 (Tex.1975). We must accept as true the non-movant's version of the facts from the admissible summary judgment

proof and indulge every reasonable inference to be drawn from such facts in his favor. *Wilcox* at 593. *Gano v. Jamail,* 678 S.W.2d 152, 155 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Crystal City Indep. School District v. Crawford,* 612 S.W.2d 73, 74 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

A review of the summary judgment proof before us reveals the following:

1. The text of the buy-sell agreement, specifically sections 2, 3, 6, 8, 14, and 16, contains several references to the contemplated automatic assumption of the loan by "buyer" and the "consent" and/or "agreement" of First Texas.

2. The express language of the agreement contemplates action regarding financing to be taken by First Texas Savings Association in the event GAL exercised the "put."

3. The express form of the agreement includes a space for First Texas to sign as indication of its consent to the transfer of the financing as contemplated by the agreement.

4. Without First Texas' consent, the parties themselves had no power to contract regarding assumption of the financing which was contemplated by the agreement to occur if the property were transferred from GAL to Turboff.

5. A report to the audit committee of Gemcraft prepared by legal counsel for Gemcraft and submitted by GAL concludes that the enforceability of the agreement depends upon the intent of the parties and cannot be determined merely on the basis of the absence of First Texas' signature.

6. The affidavit of Don Aron, an interested witness, asserts that Turboff expressed his intent to be bound by the agreement with or without the signature of First Texas. The controverting affidavit of Jerald Turboff denies any such intention or representation.

7. Annex I to Turboff's affidavit, a letter dated November 5, 1985 from counsel for First Texas to GAL and the Turboffs, refers to the agreement as requiring the consent of First Texas.

8. The pleadings on file set out a cause of action for fraud and conspiracy as well as plaintiff's breach of contract claims. Plaintiff specifically alleged that the buy-sell transaction was designed to "use and exploit" GAL to warehouse certain property so that Gemcraft could "go public" and Turboff could profit substantially.

The evidence outlined above indicates that the transaction was not consummated as proposed or intended and supports the reasonable inference that the consent of First Texas to the financing terms of the agreement was contemplated by the parties. We must indulge all reasonable inferences in favor of the non-movant. *Nixon v. Mr. Property Management,* 690 S.W.2d at 549. This inference is sufficient to raise a fact question concerning whether the parties contemplated the consent of First Texas as a condition to enforceability of the agreement. *Freed v. Dicker,* 539 S.W.2d 211, 213 (Tex.Civ.App.—Dallas 1976, no writ). Furthermore, in the face of this inference, the irrelevance of First Texas' signature cannot possibly be established as a matter of law. Therefore, the summary judgment evidence was insufficient to support the trial court's order and the judgment was improper. For the same reason summary judgment for Turboff would have been equally improper.

The intent of the parties in regard to First Texas' consent is the controlling issue in determining the enforceability of the contract. Intention is a question for the fact finder. *Foreca, S.A. v. GRD Development Company, Inc.,* 758 S.W.2d 744, 745–46 (1988); *Houston Chronicle Publishing Co. v. McNair Trucklease, Inc.,* 519 S.W.2d 924, 928 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). The jury is entitled to resolve the question of the intention of the parties. *Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612, 629 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985).

*Foreca,* a breach of contract case, addressed the issue of enforceability in regard to a set of documents containing a

"subject to" provision which was not met by the parties. The intent of the parties to be bound by the agreements was disputed. The jury was asked to determine whether the documents constituted a buy-sell agreement, whether GRD breached any such agreement found to exist, and whether Foreca would have been ready, willing and able to perform its agreement, if any, with GRD. The jury found that an agreement did exist and that GRD had breached it. The court of appeals reversed and rendered a take-nothing judgment against Foreca, 747 S.W.2d 9, holding that the written instruments contained an unmet condition and were *not* enforceable as a matter of law. In reversing the court of appeals and reinstating the trial court's judgment, the Supreme Court, citing its opinion in *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554 (Tex.1972), said:

> Agreement was reached as to certain material terms, yet another formal document was contemplated by the parties. Was the contemplated formal document a condition precedent to the formation of a contract or merely a memorial of an already enforceable contract?
>
> Professor Corbin's writing is instructive on this question: One of the most common illustrations ... is one where the parties consider the details of a proposed agreement ... with the understanding that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. *Often it is a difficult question of fact whether the parties have this understanding.... It is a question of fact that the courts are deciding, not a question of law; and the facts of each case are numerous and not identical with those of any other case. In very many cases the question may properly be left to a jury.* A. Corbin, *Corbin on Contracts* § 30 at 97 (1963). (Emphasis in Supreme Court opinion.)

Based on their holding that the intention of the parties presents a question of fact for a jury, the Supreme Court then reversed the court of appeals and affirmed the jury's verdict holding that "[t]his question was properly submitted to and answered by the jury in fulfillment of its fact finding responsibilities." *Foreca* at 746.

While we note the distinction in the facts of *Foreca* which dealt with a contemplated additional document and the instant case, dealing with the contemplated signature of First Texas, we see an analagous issue of intent in both disputes. In both cases the disputes center on the *intention* of the parties to be bound by the documents in existence. Both cases turn on whether issues of intent are appropriate for resolution as a matter of law. "Issues of intent ... are not susceptible to being readily controverted and are inappropriate for summary judgment." *Allied Chemical Corp. v. DeHaven*, 752 S.W.2d at 158. The Supreme Court's holding, that intent is a question of fact to be determined by the trier of fact, is applicable in regard to this summary judgment.

In addition, appellee's argument that summary judgment was appropriate because First Texas ultimately consented to the financing terms is unpersuasive. The agreement was executed in May of 1984. The "put" option was exercised in December of 1985. First Texas allegedly consented to the assumption of the loan in August of 1986. This eventual agreement, if it did occur, would be irrelevant to the summary judgment issue. The enforceability of a contract does not depend upon an extraneous event which allegedly occurred more than two years after the date of the contract in question and nine months after the alleged breach of that contract. Furthermore, GAL's argument that First Texas' belated consent supports the summary judgment because it removed the only impediment obstructing Turboff's performance seems weighted toward the conclusion that the consent of First Texas was required in the first place.

In addition to the existence of the fact question of intent which rendered summary judgment improper, there were also allegations of misrepresentation and fraud before the trial court when the motion for summary judgment was considered. These allegations clearly turned, at least in part, on

overlapping issues of the Turboffs' intent in entering into the contract. *Absent fraud* the courts will enforce an unambiguous contract to give effect to the intention of the parties. *Dedier v. Grossman*, 454 S.W.2d 231 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). (Emphasis added.) The law thus recognizes the principle that issues of fraud may be closely entwined with issues of contractual intent. Its allegations of statutory fraud in a real estate transaction required GAL to prove and Turboff to defend against allegations of "a false representation of a past or existing material fact ... for the purpose of inducing that person to enter into a contract ... or ... a false promise to do an act with the intention of not fulfilling it ... for the purpose of inducing ... a contract." TEX. BUS. & COMM.CODE ANN. § 27.01(a) (Vernon 1987). The granting of the partial summary judgment, which was then relied on by GAL to preclude introduction of evidence regarding the parties' intent to contract, severely prejudiced the defendants' rights to develop fully their defense to the fraud allegations. Further prejudice was suffered by them when, in response to their attempts to introduce such evidence of their intent, the trial court permitted GAL to introduce the interlocutory order of partial summary judgment. Using a blown-up poster of the order, counsel for GAL admonished the jury that Turboff was "asking them to overrule the judge" and suggested that once the summary judgment was granted, Turboff should then have performed under the contract. Even had the summary judgment been properly granted, the prejudicial effect on the jury of such admonishments is obvious.

Because the granting of the summary judgment limited to an indeterminate degree the evidence which was allowed before the jury, we decline to consider appellants' point of error attacking the sufficiency of the evidence to support GAL's fraud claims and the cross-points urged by appellee. It is equally futile, with the evidence having been so limited, to attempt to rule on appellants' contention that GAL's fraud claims were merely disguised breach of contract claims.

Appellants' second point of error is sustained. Since our holding that the summary judgment was improperly granted is dispositive of the appeal, we do not consider appellant's other points of error. The judgment of the trial court is reversed and the cause is remanded for retrial.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the other members of the Court, I record my respectful dissent. I would hold that the summary judgment on an unambiguous contract was proper and that the order of summary judgment was properly admitted at trial.