

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00022-CV

PLEASANT GROVE INDEPENDENT SCHOOL DISTRICT, Appellant

V.

FIELDTURF USA, INC. AND ALTECH, INC., Appellees

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 15C1318-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

To build a new football stadium, Pleasant Grove Independent School District contracted with prime contractor Altech, Inc., which in turn contracted with subcontractor Sports Constructors, which contracted, finally, with FieldTurf USA for the manufacture and provision of an artificial-turf field bearing the product name Prestige XM-60 with Duraspine fibers. Though the field's life was purported to be ten to twelve years and was warranted for eight years, the field started degrading within five years. This turf struggle resulted, producing various claims among Pleasant Grove, Altech, and FieldTurf. The trial court granted summary judgment in favor of Altech and partial summary judgment in favor of FieldTurf as to Pleasant Grove's fraud claims. Pleasant Grove's remaining claim against FieldTurf proceeded to trial, where the jury, based on its finding that FieldTurf breached its warranty, awarded Pleasant Grove $175,000.00 in actual damages. Both Pleasant Grove and FieldTurf appealed.

Pleasant Grove argues that the trial court erred in (a) granting summary judgment for Altech because Altech's motion was defective and there were material issues of fact in dispute, (b) granting summary judgment for FieldTurf on Pleasant Grove's fraud and fraud in the inducement claims, (c) improperly instructing the jury as to the measure of damages, and (d) not granting a partial new trial as to attorney fees.

In its cross appeal, FieldTurf contends that the trial court erred by not granting judgment notwithstanding the verdict because (a) Pleasant Grove failed to present evidence that the warranty was breached, (b) Pleasant Grove's exclusive remedy under the warranty was repair or replacement, (c) Pleasant Grove failed to plead or prove that the warranty failed of its essential

2

purpose, (d) there was legally insufficient evidence of notice and opportunity to cure, and (e) there was no evidence of damages.

In Part A of this opinion, we explain why we reverse Altech's summary judgment against Pleasant Grove as to the G-Max warranty claim only, because a fact issue exists by virtue of the summary-judgment evidence regarding whether Altech breached its warranty that the field would meet G-Max testing specifications. That reversal results from the following two conclusions: although (1) Altech's motions for summary judgment were not facially defective, (2) the G-Max report raises an issue of material fact.

In Part B of this opinion, we explain why we affirm FieldTurf's partial summary judgment against Pleasant Grove, based on the following three conclusions: although (B1) FieldTurf has failed to negate Pleasant Grove's reliance and therefore cannot claim entitlement to summary judgment on that basis, (B2) there is no summary-judgment evidence of an affirmative material misrepresentation to Pleasant Grove, and (B3) there is no summary-judgment evidence that creates any duty of FieldTurf to disclose.

In the final paragraph of this opinion, we conclude that a remand for new trial is the necessary result, restoring the parties to the status quo at the time of the summary judgment rulings and having the trial court proceed from that point forward in light of this opinion.

## Factual and Procedural Background

Pleasant Grove contracted with Altech to be the general contractor for the construction of its new high school football stadium and the installation of a synthetic turf field. Afterward, Pleasant Grove considered several different turf manufacturers and several different turf products.

According to a written declaration and deposition testimony, which ultimately were excluded by the trial court, James Kevin Davis, then Pleasant Grove's Athletic Director and head football coach, had several meetings and telephone conversations with FieldTurf representatives in late 2008 or early 2009, who told him that the Duraspine fiber comprising FieldTurf's Prestige XM-60 synthetic turf was available in the school's required colors of green, white, gold, and black; that it was more durable; that it would stay erect longer than its competitors' products; that it had better aesthetics than its competitors' products; and that the FieldTurf field would last ten to twelve years. Relying on those representations, Davis recommended the Prestige XM-60 field containing Duraspine fiber FieldTurf product to the Pleasant Grove Board, which, in the spring of 2009, almost a year after contracting with Altech, selected the Prestige XM-60 with Duraspine as their new synthetic-turf field. Altech had previously subcontracted the field's installation to Sports Constructors, Inc., which, after Pleasant Grove chose the Prestige field, obtained the turf materials and/or labor from FieldTurf to construct and install the field.

The field was installed between August and October 2009. FieldTurf provided an eight-year limited warranty on the artificial-turf field. FieldTurf's Manufacturer's Limited Warranty for the field provided:

> FIELDTURF warrants that if Prestige XM-60 for football, soccer, synthetic turf proves to be defective in material or workmanship, resulting in a loss of pile height greater than 50%, during normal and ordinary use of the Product for the sporting activities set out below or for any other uses for which FieldTurf gives its written authorization, within 8 years from the date of completion of installation, FieldTurf will, at FieldTurf's option, either repair or replace the affected area without charge

The warranty period officially began on or about April 14, 2010.

4

Around June 2014, Pleasant Grove personnel first notified FieldTurf that the field was significantly degrading and its fibers were becoming brittle, causing color loss and loss of traction. In July, a FieldTurf representative, Ross Wittig, personally walked the field and took photos. Afterward, in an "off the record" conversation with Josh Gibson, who had, in 2014, replaced Davis as coach and Athletic Director, and Steve Shatto, Pleasant Grove's maintenance director, Wittig said that the field was "in bad condition" and that:

> FieldTurf has multiple fields that are failing. They're failing at -- at a large rate all over the United States. There are some schools that are getting these fields replaced; that they've just started turning down, you know, people. And so his advice to us was that the squeakiest wheel -- those were his words: the squeakiest wheel is going to get attention, and -- and, you know, we needed to raise a fuss about our product.

In Wittig's email to FieldTurf, he confirmed that "[t]here [were] some safety concerns," that the gold-colored fibers in the end zones "ha[d] about disappeared," that "[m]any inlays [were] separating," and that the field's white lines were beginning to disappear.

After continued complaints about the field, FieldTurf's designated Duraspine field evaluator, Todd Bresee, inspected the field in September 2014, and in his report,[1] he concluded that the field was "showing signs of accelerated wear in all the fiber colors" between the football field's numbers, that there were "large amounts of broken fiber on the surface," and that the "gold fiber is broken completely down to the top of the infill." He found that the green fibers that comprised the majority of the field were in poor or fair condition, that all the gold fibers were in poor condition, that only the black fibers found in the end zone and field logo were found to be in

---

[1]Pleasant Grove did not receive Bresee's report until after litigation began.

5

good condition, and that none of the fibers were found to be in very good or excellent condition. Bresee's report to FieldTurf included the following comments:

> The field has a large amount of broken fiber on it. The AD showed me pics of this fiber clogging up his players cleats when the field is wet. Owner is also upset with the amount of fiber that has to be cleaned out of the locker room each day. I was on my knees taking pictures and when I stood up I was covered with the green field fiber, Owner took pics of my pants covered with the fiber. This field needs to be cleaned and loose fiber removed.

Gibson testified that the field was the worst he had ever seen, that it was covered in broken and split fibers, and that it had become a safety issue due to the layer of broken fibers making the field slippery. Gibson testified that Bresee agreed with him that the field was in "bad shape."

In the last three months of 2014, Pleasant Grove contacted FieldTurf complaining of the field's premature wear and degradation and demanding that FieldTurf replace the field under warranty. In January 2015, FieldTurf Customer Service Director, Julie Paquin, responded to Pleasant Grove's requests with an email that claimed that inspection found the field to be in "fair/good condition," that the field problems were merely cosmetic and presented no playability or safety hazards, and that the field merely needed a "laymor scrape" process that would remove some of the rubber infill at the base of the fibers to expose more of the fibers. Pleasant Grove rejected the offered process, argued that the laymor scrape would improve only the cosmetic look of the field for a short period of time, and demanded that FieldTurf honor the warranty and replace the field. In its February 12, 2015, response, FieldTurf refused to replace the field and claimed that even though the fibers were showing signs of degradation, the field was not at the point of replacement because the fiber degradation was "predominately a problem of appearance." When further requests for replacement were denied, Pleasant Grove declared the turf struggle in

6

September 2015, filing a claim against Altech for breach of warranty and claims against FieldTurf for fraud and breach of warranty.[2] Pleasant Grove subsequently removed and replaced the field at its own expense.

Altech filed a traditional motion for summary judgment, arguing that it had no role in choosing the field that was installed and that it made no guarantee or warranty that the turf field would be free from defects permitted by the contract or free from inherent defects. Altech also filed a no-evidence motion for summary judgment arguing that there was neither evidence of an applicable warranty nor evidence that Altech breached such a warranty. FieldTurf filed a traditional and no-evidence motion for partial summary judgment as to Pleasant Grove's fraud claims arguing that the independent injury rule barred the fraud claims, that there was no evidence that its representatives knowingly misrepresented a material fact, that reliance was negated by FieldTurf's written warranty, and that there was no evidence of fraud by omission because they had no duty to disclose.

The trial court granted the motions filed by Altech and FieldTurf without specifying the grounds on which it was granting the motions or whether it was granting the motions on traditional grounds or no evidence grounds. Pleasant Grove's remaining claim for breach of warranty against FieldTurf proceeded to trial, where the jury found that FieldTurf breached its warranty and awarded Pleasant Grove $175,000.00 in actual damages.

---

[2]Pleasant Grove initially also filed claims against SportsConstructors, later known as Wyatt Sports, Inc., which became a part of Paragon Sports Constructors, LLC, but Pleasant Grove nonsuited the claims.

## Part A.  Altech's Summary Judgment

Pleasant Grove claims that the trial court erred in granting summary judgment in favor of Altech for two reasons:  (a) Altech's motions were facially defective because they failed to address Pleasant Grove's claims that Altech had breached its express warranty that the field would meet the G-Max testing specifications and (b) there was a fact issue regarding whether Altech breached the express warranty that the field would meet G-Max testing specifications.[3]

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment was sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

"When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).  "If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it

---

[3]Each of Pleasant Grove's points of error relate to both Altech's traditional motion for summary judgment and its no-evidence motion.

necessarily fails." *Id*. (citing *Merriman*, 407 S.W.3d at 248). "Thus, we first review each claim under the no-evidence standard." *Id*. A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented." *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). The plaintiff will defeat a defendant's no-evidence summary-judgment motion if the plaintiff presented more than a scintilla of probative evidence on each element of its claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.).

"Any claims that survive the no-evidence review will then be reviewed under the traditional standard." *Parker*, 514 S.W.3d at 219–20. To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

9

*(A1)    Altech's Motions for Summary Judgment Were Not Facially Defective*

In reviewing an order granting summary judgment, we may consider only the arguments raised and presented to the trial court in the parties' written motion for summary judgment and the response.  TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a(c); *see Clear Creek Basin Auth.*, 589 S.W.2d at 677; *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.). We may not rely on the briefs in determining whether grounds were expressly presented to the trial court.  *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997).  The failure to raise a ground in a motion for summary judgment precludes summary judgment from being granted on that ground.  *See id.*; *Klentzman v. Brady*, 312 S.W.3d 886 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  "A motion must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Altech's contract with Pleasant Grove contained the following general contractor's warranty provisions:

> § 1.1.3 THE WORK
> The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.
>
> § 3.5 WARRANTY
> § 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents [and] that the Work will be free from defects not inherent in the quality required or permitted . . . .

Pleasant Grove's petition alleged,

10

> 5.1 Altech was the general contractor who promised [Pleasant Grove] that the [stadium and field construction] Project would include the provision and installation of quality artificial turf materials which were defect free. The Project was not free from defects. The turf materials, as installed, have prematurely worn, degraded, and failed, and are defective in their design and installation.
>
> 5.2 …Altech, [the other contractors, and FieldTurf] all agreed that the field would comply with the project manual and product specifications. However, Altech, [the other contractors, and FieldTurf] breached these agreements by failing to provide a field free from defects which was appropriate for multi-sport use and other outdoor activities, and instead, providing a field with loose, separating seams and with fiber which prematurely degraded and/or deteriorated, shed, split, and lay over; in addition, the field has exceeded acceptable shock absorption criteria as measured by G-Max testing.

Pleasant Grove argues that, in addition to a claim under the contract's general contractor's warranty,[4] its petition also asserted a separate and distinct warranty claim based on Altech's "express G-Max warranty" and that both of Altech's motions for summary judgment are facially defective because they failed to address or challenge the G-Max warranty claim. Essentially, Pleasant Grove contends that the trial court granted summary judgment on a ground Altech failed to plead in its motions. *See Ritchey v. Pinnell*, 324 S.W.3d 815, 821 (Tex. App.—Texarkana 2010, no pet.) ("Summary judgment cannot be granted on grounds not properly presented to the trial court in the written motion for summary judgment."). Pleasant Grove's argument notably fails to cite the specific contract language on which this argument is based, but the argument appears to refer to the following statement in the contract specifications: "Field surface shall maintain a G-Max rating within the limits of the Ultimate G-max range listed above throughout the life of the synthetic turf system warranty."

---

[4]Pleasant Grove does not challenge the trial court's granting of summary judgment as it relates to its claims under the general contractor's warranty.

11

Altech's traditional motion for summary judgment argued that Pleasant Grove selected and approved the specific turf product that was to be installed, that Altech did not warrant the turf product against inherent defects or those permitted by the contract documents, and that the field defects alleged by Pleasant Grove were inherent in the product. Altech's no-evidence motion for summary judgment argued, "There is no evidence that Altech, Inc.[,] breached any warranty or guarantee that the field would be defect free. Altech, Inc.[,] made no guarantee or warranty that the turf product would be free from defects permitted by the contract documents or inherent defects." Pleasant Grove's response contended,

> Evidence within this record establishes that the Field's fiber is not defect-free and does not conform to the Contract Documents. . . . Apart and aside from the Field's fiber issues regarding UV degradation, excessive layover, and fiber loss, the Field also fails to meet the Specification requirement regarding the performance of the system as a whole, as measured by G-Max testing.

It is apparent from Pleasant Grove's petition and response that the field's failure to meet the specified G-Max rating is merely one of many listed ways in which the field was defective. Aside from the individual defects of the field's fiber, such as "UV degradation, excessive layover, and fiber loss," the field was also defective as a whole, in that it failed to meet the required G-Max rating, which, by testing shock-attenuation, measures the "performance of the [field] system as a whole." Therefore, Altech's motions were not facially defective because the traditional and no-evidence motions for summary judgment addressed the allegations and existence of evidence that it had made and breached a warranty against the field's defects. *See McConnell*, 858 S.W.2d at 341. Accordingly, we overrule this point of error.

12

*(A2)    The G-Max Report Raises an Issue of Material Fact*

Among the many defects listed by Pleasant Grove, the district alleges that Altech breached its warranty because the field failed to meet the specified G-Max rating.  As breach of warranty is a type of breach of contract action, in order to recover for the breach of an express warranty, a plaintiff must prove:  (1) the existence of a warranty by express affirmation of fact or promise relating to the materials used and/or work performed, (2) that such warranty became a part of the basis of the bargain, (3) that the plaintiff relied on said warranty, (4) that the seller breached the warranty, and (5) that the seller's breach caused the plaintiff's injury. *See Hackberry Creek Country Club v. Hackberry Creek Homeowners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied); *see also Great Am. Prods. v. Permabond Int'l., a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied).  Pleasant Grove contends that the trial court erred in granting Altech's traditional motion for summary judgment because Pleasant Grove raised an issue of fact regarding whether Altech "breached the express warranty that the field would meet the G-Max testing specifications."

Here, a subsection in the contract specifications for the artificial turf field stated,

The synthetic turf system shall meet the following shock absorption criteria when combined with the shock absorbency pad beneath the system:
    a.    G-Max Rating Range (on installation)    80-120    ASTM F 355
    b.    G-Max Rating Range (Ultimate)    100-140    ASTM F 355
    c.    Field surface shall maintain a G-Max rating within the limits of the Ultimate G-max range listed above throughout the life of the synthetic turf system warranty.

Pleasant Grove attached excerpts from the deposition of Roland Kunkel, Pleasant Grove's expert witness, and a G-Max testing report performed by Bounce Diagnostics to its response to Altech's

motion for summary judgment. The G-Max testing occurred March 3, 2016, and involved the testing of thirteen different locations on the field, resulting in G-Max ratings from 143.6 to 188.4 and a field average G-Max rating of 166.65. Pleasant Grove argued that, because the G-Max ratings shown in the report exceeded those required by the specifications—indicating that the field was too hard—the report's test results were evidence of, and raised a question of fact regarding, whether Altech breached its warranty.

Altech objected to the report on several grounds, including, but not limited to, failure of authentication. After hearing arguments, the trial court sustained Altech's objection and struck the report from the summary-judgment evidence.[5] However, the trial court's ruling was never reduced to a written order and entered in the clerk's record.

Even if a trial court sustains a party's objection to an opponent's summary-judgment evidence, the objected-to evidence remains a part of the summary-judgment proof unless the trial court's order is reduced to writing, signed by the trial court, and entered of record.[6] *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (citing *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.)); *see also Duncan-Hubert v. Mitchell*,

---

[5]FieldTurf argues that Pleasant Grove waived this argument by failing to challenge the trial court's order sustaining the objection to the G-Max report. However, even though there was no written order for Pleasant Grove to challenge on appeal, this argument was preserved because, for reasons stated herein, the evidence remained a part of the summary-judgment record.

[6]This rule furthers two purposes. First, a ruling is necessary to comply with the rules of preservation of error. *See generally* TEX. R. APP. P. 33.1(a)(2). Second, a written ruling entered into the record is necessary so that a court of appeals reviewing the case can determine what evidence the trial court considered in reaching its summary-judgment decision. *See Utils. Pipeline Co. v. Am. Petrofina Mktg.*, 760 S.W.2d 719, 722 (Tex. App.—Dallas 1988, no writ).

14

310 S.W.3d 92, 100 (Tex. App.—Dallas 2010, pet. denied) (mere granting of summary judgment was not implicit ruling on movant's objections to non-movant's summary-judgment evidence).

Here, even though the trial court granted Altech's objection to Pleasant Grove's G-Max report, the court's order was not reduced to writing, signed, and entered of record. Accordingly, the report remains a part of the summary-judgment proof. *See Seim*, 551 S.W.3d at 166. The results of the report indicate that the field's individual and average G-Max ratings exceeded those required by the specifications, which creates a dispute regarding a material fact.[7] Therefore, the trial court erred in granting Altech's no-evidence and traditional motions for summary judgment as to the G-Max testing. Accordingly, we reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

### Part B. FieldTurf's Partial Summary Judgment

Pleasant Grove's petition raised claims for fraud in the inducement as it relates to the direct representations made to Davis, particularly that the field would last ten to twelve years, and a claim for fraudulent inducement by omission based on FieldTurf's alleged failure to disclose other material facts. The trial court granted FieldTurf's no-evidence and traditional motions for partial summary judgment as to Pleasant Grove's fraud claims without specifying which of the two motions was granted or on what grounds. In its second point of error, Pleasant Grove challenges all four grounds on which FieldTurf sought summary judgment and argues that the trial court erred

---

[7]Because the trial court's order granting summary judgment in favor of Altech failed to specify the grounds for summary judgment or whether it was granting the no-evidence or traditional motion, it is unclear from the order whether summary judgment was granted based on a refusal to consider the G-Max report. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018.); *Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 100 (Tex. App.—Dallas 2010, pet. denied).

15

in granting the motions because the independent injury rule does not apply to bar Pleasant Grove's claim of fraudulent inducement, there is a material fact issue as to whether FieldTurf knowingly made false representations, FieldTurf's warranty does not negate reliance as a matter of law, and FieldTurf had a duty to disclose facts when non-disclosure conveyed a false impression.

For a plaintiff to show fraud, it must show that the defendant made a material misrepresentation that was false and that was either known to be false when made or was asserted without knowledge of the truth, intending to induce the plaintiff to act in reliance on the representation, which caused injury. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 338 (Tex. 2011). Fraudulent inducement is "a particular species of fraud that arises only in the context of a contract," and "the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Thus, a fraudulent inducement claim has the same elements as a fraud claim, plus the added element that the fraud related to a binding contract between the parties.[8] *Id.*

---

[8]On appeal, FieldTurf contends that the trial court's order granting its motions for summary judgment as to Pleasant Grove's fraudulent inducement claims should be affirmed because there is no evidence that there was a contract between FieldTurf and Pleasant Grove. This argument was not raised in FieldTurf's motions but was argued during the summary-judgment hearing. At the trial court's request, the parties filed supplemental briefs regarding whether a plaintiff may maintain an action for fraud in the inducement when (1) the plaintiff does not have a contract with the defendant and (2) no individual corporate agent committed all of the elements of fraud. However, "[a] motion for summary judgment must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). The fact that this argument was raised by supplemental briefs filed at the request of the trial court did not raise this as a ground for summary judgment. Because FieldTurf failed to raise the lack of a contract in its written motions, the trial court could not have granted summary judgment on that ground, and it cannot be considered in this appeal. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675 (Tex.1979).

The independent-injury rule provides that, when a plaintiff raises claims for both tort—be it misrepresentation or fraud—and breach of contract arising out of the same facts, the plaintiff may recover only in tort on showing that it suffered damages as a result of the alleged tort that were independent of any benefit-of-the-bargain damages resulting from the breach of contract. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (op. on reh'g) (citing RESTATEMENT (SECOND) OF TORTS § 552B (1977)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 301–02 (Tex. App.—Dallas 2009, no pet.). In short, if a plaintiff cannot establish an independent injury—a loss that is independent or different from that recoverable under breach of contract—its recovery in tort is barred. *D.S.A.*, 973 S.W.3d at 663; *Esty*, 298 S.W.3d at 301–02; *Piano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.). However, the independent injury rule does not apply to bar claims for fraud in the inducement. *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 47 (Tex. 1998).

Here, Pleasant Grove's petition raised various claims for negligent misrepresentation and fraud. However, at the summary-judgment hearing, Pleasant Grove clarified that it was making a claim only for fraud in the inducement, thereby abandoning any claim for common-law fraud or misrepresentation. Because the independent-injury rule does not apply to bar claims for fraud in the inducement, and that is the only fraud claim raised by Pleasant Grove, it could not have been the basis of the trial court's summary judgment. *See Formosa Plastics Corp. United States*, 960 S.W.2d at 47. Therefore, we move to our three main conclusions in this part of our opinion.

17

*(B1)*   *FieldTurf Has Failed to Negate Pleasant Grove's Reliance and Therefore Cannot Claim Entitlement to Summary Judgment on that Basis*

Pleasant Grove challenges FieldTurf's summary-judgment argument that its express warranty negated the element of reliance as a matter of law. We disagree.

The warranty for the field sold to Pleasant Grove states,

> FIELDTURF warrants that if Prestige XM-60 for football, soccer, synthetic turf proves to be defective in material or workmanship, resulting in a loss of pile height greater than 50% during normal and ordinary use of the Product for the sporting activities set out below or for any other uses for which FIELDTURF gives its written authorization, within 8 years from the date of completion of installation, FIELDTURF will, at FIELDTURF's option, either repair or replace the affected area without charge, to the extent required to meet the warranty period (but no cash refunds will be made).
>
> . . . .
>
> **EXCEPT AS EXPRESSLY SET FORTH IN MANUFACTURER'S LIMITED WARRANTY ABOVE, MANUFACTURER DISCLAIMS ALL OTHER WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, IN FACT OR IN LAW, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

In its motion, FieldTurf argued, in pertinent part, that, "by providing the express warranty at issue, FieldTurf expressly told [Pleasant Grove] that the field could wear out prematurely," and that "[t]he element of reasonable reliance is therefore defeated." Both in its motions and on appeal, FieldTurf cited two cases in support of its argument, but failed to explain how they apply to this case.

Under the holding of *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, reliance is negated as a matter of law when circumstances exist under which reliance cannot be justified, such as the presence of "red flags" or contractual language that directly contradicts prior oral

18

representations. 546 S.W.3d 648, 655 (Tex. 2018). However, the facts of this case are distinguishable from those of *JPMorgan Chase Bank*, *N.A.*, as the mere presentation of a warranty is not a red flag and there are no oral representations in this case contradicting the warranty. FieldTurf also cited *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc.*, where the court of appeals reiterated the legal maxim that reliance on oral representations can be waived by contractual merger and/or integration clauses that disclaim reliance on oral representations. 847 S.W.2d 289, 297 (Tex. App.—El Paso 1992, writ denied). However, the facts of *Airborne* are also distinguishable from those of this case because here, FieldTurf did not move for summary judgment on the basis of an integration or merger clause.

FieldTurf has failed to cite any legal precedent holding that the presentation of a warranty negates reliance under the facts of this case, and we are aware of none. Therefore, FieldTurf has failed to establish that it was entitled to judgment as a matter of law on this issue. Thus, this was not a viable ground for summary judgment here.

*(B2)*    *There Is No Summary-Judgment Evidence of an Affirmative Material Misrepresentation to Pleasant Grove*

Pleasant Grove attached a deposition of Kevin Reynolds, product manager, director of operations, and vice president of operations for FieldTurf, to its response to FieldTurf's motions. In the deposition, Reynolds testified that FieldTurf had received complaint reports from its employees in Texas and throughout the United States regarding the Duraspine fiber comprising the turf product at issue. In late 2007, in response to these reports, several FieldTurf senior executives visited various New Jersey locations where its turf product was installed to inspect the

19

fields. They saw "premature degradation" of the fields' green and colored fibers, and Reynolds testified that

> it was somewhat eye-opening in terms of what was – what we were seeing in real-time versus some of the claims that we were making and some of the understanding we had even within our offices that, you know, this product really isn't living up to what we were claiming it should be doing.

In October 2007, an email thread with subject heading "NJ field trip notes and observations" was started between FieldTurf executives in order to inform them of the inspection trip's findings and discuss possible solutions. The email's listed possible solution to the problems of Prestige fields containing DuraSpine, such as the one later sold to Pleasant Grove, was that the Prestige field "should not be offered" with the DuraSpine fiber.

Also attached to Pleasant Grove's response were emails to and from FieldTurf executives from November 2007 and February 2008 containing the following admissions regarding the fiber comprising the turf product:

> As we know now there are outrageous claims being made everyday by sales people, suppliers, design professions and others as it relates to durability, wear and resilience.
>
> . . . .
>
> Since we are right in the heaviest part of the sales seasons there are literally dozens of presentations, meetings and sales calls being performed daily now. It's at these types of engagements where most of the misinformation and misrepresentation is happening. There's an opportunity to nip it in the bud now.
>
> . . . .
>
> As you know our sales and marketing continually make claims that we can't possibly meet in the real world. This opens us up to tons of exposure from a legal standpoint. . . . On the marketing side . . . the claims made regarding the [fiber comprising the turf product] are ridiculous. Everyday we are putting stuff out there

20

that can't and won't live up to the marketing spin. We have to control this somehow!!!

In his deposition, Reynolds testified that "they were constantly badgering the Sales and Marketing people . . . to back off on these claims" regarding the fiber's resistance to layover, wear, ultraviolet light, and foot traffic and the claims that the DuraSpine fiber would last much longer than eight to ten years "as soon as possible and [to] stop making them because . . . [they could not] deliver a product that lives up to these marketing claims."

The only evidence of a FieldTurf representative making a material misrepresentation to Pleasant Grove was James (Kevin) Davis's written declaration and his deposition testimony, both of which were attached to Pleasant Grove's response. The written declaration alleged that, in "2008 and perhaps early 2009," while Davis was Pleasant Grove's Athletic Director and Head Football Coach, he had "multiple meetings and phone conversations with FieldTurf representatives," who told him that the Prestige turf field was the same field used by the National Football League's New England Patriots and a number of Division I colleges, that FieldTurf's DuraSpine fiber "was more durable and would stay erect longer than its competitors," and that the artificial-turf field would last ten to twelve years. Though Davis could not remember the name of the FieldTurf representatives he spoke or met with, he claimed that he relied on their representations "as part of the basis" for his recommendation to Pleasant Grove to purchase the FieldTurf Prestige XM-60 field that the school eventually purchased. However, a portion of Davis's deposition testimony differed from the statements in the declaration. In Davis's deposition, he testified that the only name of a FieldTurf representative that stood out in his memory was that of Randy Bullock, but he could not remember how many times he met or spoke

with a FieldTurf representative, and he was unable to say with any certainty that Bullock was the representative with whom he met. While he could not remember whether the FieldTurf representative told him that the Patriots's field was the same Prestige field, he affirmed that the brochure given to him by the FieldTurf representative said that the Patriots had the same field.

FieldTurf objected to Davis's declaration and deposition testimony being used as summary-judgment evidence and argued that the declaration was untimely, as it was not disclosed until after the deposition had occurred, that the deposition testimony was not attached to Pleasant Grove's response, and that the declaration was a sham affidavit because it conflicted with his deposition testimony. After hearing the parties' arguments, the trial court sustained FieldTurf's objection and struck both Davis's declaration and his deposition testimony.

Ordinarily, the declaration and deposition testimony would remain in the summary-judgment evidence because FieldTurf failed to secure a signed, written order sustaining its objection. *See Seim*, 551 S.W.3d at 166. However, due to our findings below regarding the remaining grounds for summary judgment, this is the only ground on which the trial court granted summary judgment on Pleasant Grove's claim of fraudulent inducement by misrepresentation, and therefore the trial court's granting of summary judgment necessarily implies a ruling excluding the Davis declaration and deposition testimony. *See Trusty*, 87 S.W.3d at 760 (order granting objection can be implied from the nature of the objections and summary-judgment grounds). Because the declaration and deposition are, thus, not a part of the summary-judgment proof, there is no summary-judgment evidence that a FieldTurf representative made a material misrepresentation to Pleasant Grove. *See Exxon Corp.*, 348 S.W.3d at 217 (material

22

misrepresentation is required element for fraud). Accordingly, we overrule this point of error regarding fraudulent inducement by affirmative misrepresentation.[9]

*(B3)    There Is No Summary-Judgment Evidence that Creates any Duty of FieldTurf to Disclose*

Also raised, however, was a claim for fraudulent inducement based on FieldTurf's alleged failure to disclose that the fiber comprising the field it sold to Pleasant Grove would prematurely deteriorate; that, in 2011, the company had sued its fiber supplier, Tencate, alleging that the fiber was defective because it prematurely degraded and disintegrated during the warranty period; and that, in 2014, the company settled its lawsuit against Tencate. FieldTurf argues that it had no duty to disclose the information.

In order for silence to become actionable for fraud by nondisclosure or fraud by omission, there must be a duty to disclose. *Bradford v. Vento*, 997 S.W.2d 713, 725 (Tex. App.—Corpus Christi 1999), *aff'd in part & reversed in part on other grounds by Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001); *Hoggett v. Brown*, 971 S.W.2d 472, 487–88 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Whether a duty to disclose exists is a question of law. *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.—Texarkana 2000, pet. denied); *Bradford*, 997 S.W.2d at 725. A duty to disclose may arise under four situations:

> (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier

---

[9]Pleasant Grove also argues that, even if the Davis declaration and deposition testimony were properly stricken from consideration, it also attached to its response its third supplemental answer to FieldTurf's interrogatory number 5, which included many of the same material allegations. However, Pleasant Grove may not rely on its own interrogatory answers to defeat summary judgment because they are only admissible as summary judgment if they were made an exhibit to the deposition, and, during the deposition, the deponent affirmed that the answers were correct and was then subjected to cross-examination about the deponent's knowledge about such answers. *See Zarzosa v. Flynn*, 266 S.W.3d 614, 619 (Tex. App.—El Paso 2008, no pet.); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000).

representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression.

*Bradford*, 977 S.W.2d 725; *Hoggett v. Brown*, 971 S.W.2d at 487 (citing *Formosa Plastics Corp.*, 960 S.W.2d at 46–47). In the context of a no-evidence summary judgment, we examine the record to determine if there are facts that might support the imposition of such a duty. *Feagins v. Tyler Lincoln-Mercury*, 277 S.W.3d 450, 457 (Tex. App.—Texarkana 2009, no pet.). In the context of a traditional motion for summary judgment, we determine whether the defendant conclusively proved that it had no such duty. *Id.* at 457–58.

Pleasant Grove contends that there is evidence to support a finding that FieldTurf had a duty because (a) it voluntarily disclosed partial information but failed to disclose the whole truth and/or (b) it made a partial disclosure that conveyed a false impression. Based on review of the record, we find that there are no facts that could support the imposition of a duty. *See id.* at 457.

Rather than requiring a knowing misrepresentation, as in a standard fraud claim, a duty giving rise to a claim for fraud by omission requires a factual representation that leaves out other facts that are material to the representation's veracity. *See Bradford*, 48 S.W.3d at 755–56 ("a party does not make an affirmative misrepresentation, but what is said is misleading"); *Hoggett*, 971 S.W.2d at 487 (fraud by omission involves failure to disclose "the whole truth"). Here, Pleasant Grove argues that, through the Davis declaration and deposition testimony, "FieldTurf fraudulently misrepresented the field would have a useful life of 10-12 years and was exceptionally durable compared to other turf products" and that those representations "disclosed partial information, but failed to disclose the whole truth" or "created a false impression that imposed a duty on FieldTurf to disclose its unique knowledge that Duraspine fibers it was selling to [Pleasant

24

Grove] were defective." Accordingly, we overrule this point of error and affirm the trial court's granting of summary judgment as to Pleasant Grove's claims of fraudulent inducement by omission.

**Conclusion**

We reverse Altech's summary judgment against Pleasant Grove as to the G-Max warranty claim only and affirm FieldTurf's partial summary judgment against Pleasant Grove. We conclude that a remand for new trial is the appropriate remedy, because the trial court's erroneous pretrial order regarding Altech limited to some degree the evidence of fault presented to the jury, and therefore the more prudent course of action is to restore the parties to the status quo at the time of the summary-judgment rulings and redo matters from that point forward. *See* TEX. R. APP. P. 43.3(b).[10]

Josh R. Morriss, III
Chief Justice

Submission Date:    December 30, 2019
Date Decided:       April 3, 2020

---

[10]*See Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 280–81 (Tex.App.—Houston [14th Dist.] 2018); *Associated Air Ctr. v. Tary Network Ltd.*, No. 05-13-00685-CV, 2015 WL 970664, at *7 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.) ("As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision."); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008), *abrogated on other grounds by Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709–10 (Tex. 2019) (remanding case for new trial, despite legal sufficiency issues, when sanctions ordered by trial court prevented full development of case); *Turboff v. Gertner, Aron & Ledet Invs.*, 763 S.W.2d 827, 832 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (declining to address trial issues and reversing and remanding for new trial because pretrial summary judgment erroneously "limited to an indeterminate degree the evidence which was allowed before the jury"); *see also Gen. Star Indem. Co. v. Spring Creek Vill. Apts. Phase V, Inc.*, 152 S.W.3d 733, 738 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reversing final judgment following jury trial based on erroneous pretrial partial summary-judgment ruling on binding nature of appraisal award).